459 So.2d 326 (1984)
CITY OF MIAMI, Appellant,
v.
James SIMPSON and Division of Workers' Compensation, Appellees.
No. AW-421.
District Court of Appeal of Florida, First District.
September 13, 1984.
Rehearing Denied December 3, 1984.
*327 Jose Garcia Pedrosa, City Atty., and Gisela Cardonne, Asst. City Atty., Miami, for appellant.
Richard A. Sicking, of Kaplan, Sicking, Hessen, Sugarman, Rosenthal, Susskind, Bloom & DeCastro, P.A., Miami, for appellees.
NIMMONS, Judge.
The City of Miami appeals from an order of the deputy commissioner awarding rehabilitation benefits to James Simpson, a former City of Miami fire fighter and paramedic. The issue before us is whether the deputy, under the circumstances of this case, properly required the City to pay benefits in connection with a rehabilitation program which Simpson embarked upon before informing the employer of any need for or interest in such a program. We reverse.
Simpson was employed by the City in May, 1972, as a fire fighter. Two years later he became a paramedic and spent the next seven years with the rescue division. On March 29, 1980, Simpson sustained a lumbosacral strain while attending a heart attack victim. He continued to work alternate periods of regular and light duty work due to his recurrent back problems. The City was willing to allow Simpson to continue working under that arrangement during the "recovery period."[1] Although MMI was not reached until October 13, 1982, he resigned on April 26, 1982. The reason for his resignation is rather unusual. It seems that Simpson, a pilot licensed by the F.A.A., had been charged in federal court with smuggling drugs by airplane. He explained that he quit his job prior to the scheduled sentencing because he wanted to submit to the sentencing court letters of recommendation, and he felt that he "couldn't ask for letters of recommendation without resigning first." Simpson was subsequently convicted and placed on probation. Although the F.A.A. was proceeding to revoke his aviation licenses, the record does not indicate the results of such proceedings.
*328 Simpson was 36 years old with better-than-average education and training. He had earned a two-year associate of arts college diploma and had experience as a helicopter mechanic, pilot, flight instructor and, for a brief period, electronic technician. Instead of looking for work or alerting the employer or the Division of Workers' Compensation that he wanted or needed vocational training, Simpson, on the advice of his attorney, sought vocational rehabilitation outside the procedures contemplated by Section 440.49(1), Florida Statutes (1981).[2] He went to the Division of Vocational Rehabilitation of the Department of Health and Rehabilitative Services (H.R.S.) in July 1982. After undergoing testing and evaluation, H.R.S. advised Simpson that he appeared suited to forest management and recommended that he enroll in college and work towards a degree in that field. This he did. Neither he nor his attorney mentioned anything of this to the employer until after Simpson was well into his course of study and had incurred substantial expenses associated therewith. The first mention to the employer of this vocational endeavor was Simpson's attorney's letter of November 3, 1982, which was a transmittal of bills incurred by Simpson and a demand that the employer pay the same.
This is not a case in which it can be said, as in Walker v. New Fern Restorium, 409 So.2d 1201, 1204 (Fla. 1st DCA 1982), that the claimant was in "substantial compliance" with Section 440.49(1). Indeed, Simpson and his attorney were proceeding totally outside the statutory framework. Further, the instant case is significantly distinguishable from Hurricane Fence Industries v. Bozeman, 413 So.2d 822 (Fla. 1st DCA 1982). There, the employee initially communicated his interest in vocational rehabilitation to the carrier which erroneously told the employee that he was not eligible for rehabilitation. A month later, he again contacted the carrier, informing the carrier of his intention to attend a particular vocational program in Chipley. Again, he was not eligible. Of course, there was no such communication involved in the case at bar. Also, this court's recent opinion in C & H Construction v. Leyman, 453 So.2d 1163 (Fla. 1st DCA 1984) does not suggest affirmance of the deputy's award in the instant case as the following portion of the Leyman opinion shows:

Hurricane Fence Industries [v. Bozeman] involved a situation like the one at issue here where the claimant's desire for rehabilitation was made known to the carrier and the employer but they did *329 nothing to provide the services, instruct the claimant on how to seek that help or invoke the procedure themselves until after the claimant had followed another path to obtain the needed services.
[At 1164].
Moreover, this is not the kind of case where we can say that the employer was derelict in not taking the lead in initiating the rehabilitation process. This 36-year-old claimant's educational background was certainly above average. His vocational training and experience were varied and above average. Further, we do not have a situation where the employer terminated the claimant's employment. On the contrary, Simpson quit his job for reasons entirely unrelated to his injury and apparently made no effort to secure other employment. Moreover, this claimant's injury was not so severe such that a reasonable employer would have known that the injured employee would likely be precluded from earning amounts comparable to his pre-injury wages. It should be remembered that when Simpson quit his job and, for all intents and purposes as far as the employer was concerned, "disappeared" for a while, he was still six months away from reaching maximum medical improvement.
The order appealed is Reversed.
ERVIN, C.J., concurs.
JOANOS, J., dissents.
JOANOS, Judge, dissenting.
The deputy commissioner found that although the City had knowledge of claimant's work-related disability, at no time did it offer a rehabilitation plan of its own to claimant, nor did it request the Division of Workers' Compensation to make its recommendations regarding claimant's rehabilitation. The deputy commissioner further found that the program undertaken and approved by the Office of Vocational Rehabilitation, Florida Department of Health and Rehabilitative Services "... was eminently correct, proper and reasonable under the circumstances." The deputy commissioner concluded that under the 1979 amendment to Section 440.49(1)(a), Florida Statutes, the claimant was not obligated to request permission from the employer before undertaking a program of rehabilitation.
Under the circumstances, the deputy commissioner should be affirmed. The record reflects that in this case the employer did not voluntarily offer rehabilitation. It appears also that the employer has not shown any prejudice by the efforts of claimant in directly undertaking a program of rehabilitation prescribed for him by the Division of Vocational Rehabilitation of the Florida Department of Health and Rehabilitative Services rather than making prior application through the Division of Workers' Compensation of the Florida Department of Labor and Employment Security. The statute is permissive with regard to the party seeking rehabilitation, for application may be made by the employee, employer, or carrier. However, the statute is mandatory with regard to the provision of rehabilitation, requiring that "[t]he employer or carrier, at its own expense, shall provide such injured employee with appropriate training and education for suitable gainful employment... ." Section 440.49(1)(a), Florida Statutes (1979), (e.s.). See, C & H Construction and Aetna Insurance Company v. Michael Leyman, 453 So.2d 1163 (Fla. 1st DCA 1984); Hurricane Fence Industries v. Bozeman, 413 So.2d 822 (Fla. 1st DCA 1982); Walker v. New Fern Restorium, 409 So.2d 1201 (Fla. 1st DCA 1982).

On Motion for Rehearing
PER CURIAM.
Our opinion stated that the claimant sustained "a lumbosacral strain". We should have described his injury as "a lumbosacral strain with an intervertebral disc syndrome at L4-5 and sciatic radiculopathy" as found by the deputy commissioner. Our opinion is therefore modified to so reflect.
The motion for rehearing is otherwise Denied.
*330 ERVIN, C.J., and NIMMONS, J., concur.
JOANOS, J., dissents.
NOTES
[1] The City of Miami Fire Department has no permanent light-duty jobs. Light duty is assigned to injured employees for their recovery period, after which they return to regular duty. It was not disputed in this case that once Simpson reached maximum medical improvement there would be no position available for him with the City Fire Department.
[2] Section 440.49(1)(a), Florida Statutes (1981) provides:

440.49 Rehabilitation of injured employees; Special Disability Trust Fund. 
(1) REHABILITATION OF INJURED EMPLOYEES. 
(a) When an employee has suffered an injury covered by this chapter and it appears that the injury will preclude the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or carrier, at its own expense, shall provide such injured employee with appropriate training and education for suitable gainful employment and may cooperate with federal and state agencies for vocational education and with any public or private agency cooperating with such federal and state agencies in the vocational rehabilitation of such injured employees. For purposes of this section only, "suitable gainful employment" means employment or self-employment which is reasonably attainable in light of the individual's age, education, previous occupation, and injury and which offers an opportunity to restore the individual as soon as practical and as nearly as possible to his average weekly earnings at the time of injury. If such services are not voluntarily offered or accepted, the Division of Workers' Compensation of the Department of Labor and Employment Security, upon application of the employee, employer, or carrier, after affording the parties an opportunity to be heard, may refer the employee to a qualified physician or facility for the evaluation of the practicality of, the need for, and the kind of service, treatment, or training, necessary and appropriate to restore the employee to suitable gainful employment. On receipt of such report, and after affording the parties an opportunity to be heard, the deputy commissioner may order that the service and treatment recommended in the record, or such other rehabilitation treatment or service deemed necessary, be provided at the expense of the employer or carrier.