501 So.2d 63 (1987)
DIMIRRA DEVELOPMENT, INC., and Cigna Companies, Appellants,
v.
David E. MILLS, Appellee.
No. BK-134.
District Court of Appeal of Florida, First District.
January 13, 1987.
James M. Hess, of Langston & Hess, Orlando, for appellants.
Edward H. Hurt, Sr., of Hurt, Parrish & Dalton, Orlando; and Bill McCabe, of Shepherd, McCabe & Cooley, Orlando, for appellee.
THOMPSON, Judge.
This is an appeal from an order directing the employer and carrier (E/C) to pay for rehabilitation services to be provided to the claimant. We reverse.
The claimant, a 42-year old carpenter, sustained a compensable injury to his lower back on November 12, 1984. He was first treated by Dr. Carducci, and after claimant's last visit on January 8, 1985, Dr. Carducci concluded that notwithstanding the claimant's continued complaints of pain he was "unable to find anything wrong with him now." He suggested claimant should attempt to return to work and gave him a return to work slip for January 14, 1985 saying, "I have nothing more to offer this man." Dr. Carducci's conclusion was based on the facts that he could find no muscle spasm or other objective reason for the claimant's complaint, claimant's x-rays were negative, his CAT scan was entirely within normal limits and his neurological examination was negative. He suggested that if the claimant still felt he was unable to return to work, he should obtain another medical opinion.
*64 Claimant was next examined by Dr. Stanford on January 18, 1985. This physical examination revealed that claimant's x-rays were normal, that his reflexes were normal, that there were no fractures, dislocations or abnormalities, that the sciatic nerve stretch test was negative, that there was no sensory loss and that there was no other objective sign of injury. Dr. Stanford examined the x-rays taken by Dr. Carducci and found no evidence of any fractures, dislocations, or subluxations of any of the vertebrae. He concluded the claimant might benefit from physical therapy and anti-inflammatory medication. When the claimant returned on January 24 still complaining of pain in his low back area, Dr. Stanford ordered an EMG examination of that area which was normal. On February 11, when claimant next saw Dr. Stanford, he was still complaining of pain. Dr. Stanford was unable to find any objective orthopedic pathology to explain the claimant's symptoms and said he had "nothing further to offer this patient." He then referred claimant to Dr. Tucker.
Dr. Tucker performed a CT scan on the claimant which was read as normal. Dr. Tucker also said "I don't have anything to offer this patient ..." and that he could return to Dr. Stanford. Claimant returned to Dr. Stanford still complaining of pain on April 4, 1985 but again Dr. Stanford could find no objective orthopedic pathology to explain his pain and referred the claimant to Dr. Brunson, a neurologist. There is no evidence in the record that the claimant ever saw Dr. Brunson and no report or other evidence of Dr. Brunson's findings, if any, appears in the record.
The record contains no medical evidence as to the claimant's condition at any time after April 1985. The claimant was examined and treated by at least three medical specialists who found no objective signs of injury at the time they released claimant. They had no explanation for his continuing complaints of pain, and all stated they had nothing further to offer the claimant. None of the medical specialists found that the claimant had sustained any permanent impairment as a result of his compensable injury. Dr. Carducci had recommended the claimant return to work on January 14, 1985, approximately two months after the accident.
Sometime prior to June 20, 1985, claimant's attorney referred him to Statewide Rehabilitation, Inc. (Statewide), a vocational rehabilitation company wholly owned by claimant's counsel and his law partners. On June 20, 1985 Mr. May, president of Statewide and a vocational rehabilitation counselor, interviewed the claimant. More than one month later May sent the E/C a letter requesting authorization to perform vocational aptitude tests on the claimant. At the time the E/C received the letter requesting authorization to perform vocational rehabilitation services, and at all other times material to this appeal including the date of the hearing on the Motion to Compel Rehabilitation, the only competent medical evidence regarding the claimant's medical condition, permanent impairment and ability to work was that the claimant had no permanent impairment and was able to return to work without any limitation.
The order appealed required that the claimant be provided rehabilitation services by Statewide. At the time claimant's attorney referred claimant to his rehabilitation company and at the time the E/C received the request from that company for authorization to perform vocational aptitude tests on the claimant, the E/C had no knowledge and no reason to think that the claimant had any need or desire for rehabilitation benefits, nor was there any evidence, medical or otherwise, that indicated the claimant had a need for or desired rehabilitation benefits. On the contrary, all the medical evidence showed that the claimant had no permanent impairment whatsoever from his compensable injury and was able to return to work without any limitations. At the time of the hearing on claimant's Motion to Compel Rehabilitation the record remained devoid of any medical evidence indicating that the claimant had any permanent impairment or that he had any limitations which would preclude him from earning his pre-accident wage. Notwithstanding *65 these facts the deputy entered the order appealed directing that the E/C provide the claimant with rehabilitation under the direction of Statewide.
The order entered by the deputy is facially insufficient as there is not a single finding of fact to support it. There is no finding that the claimant had reached MMI although that fact might be inferred from the medical testimony. There is no finding that the claimant suffered any permanent impairment based upon medically or scientifically demonstrable findings and no such finding could have been made based on the record in this case. Although May, claimant's vocational rehabilitation counselor, testified that the claimant had some disability or limitations, May was not competent to testify as to claimant's medical condition and his testimony is contrary to the medical evidence that claimant had no permanent impairment. Section 440.49(1)(a), Fla. Stat. provides that when an employee has suffered a compensable injury, and it appears that the injury will preclude the employee from earning wages equal to the wages earned prior to the injury, he shall be entitled to prompt rehabilitation services. There is no factual finding in the order and no evidence in the record which could support a finding that the claimant in this case has suffered an injury that would preclude him from earning wages equal to the wages he earned prior to the injury. Unless the order sets forth proper findings of ultimate fact, the court is precluded from making an intelligent judicial review. Ellerbee v. Concorde Roofing Co., 461 So.2d 206 (Fla. 1st DCA 1984). The order in the instant case is completely unsupported by findings of fact, and must be reversed.
In addition, the referral and the services performed by Statewide do not comply with the law and the E/C have no responsibility for the payment of this rehabilitation. City of Miami v. Simpson, 459 So.2d 326 (Fla. 1st DCA 1984). In Simpson this court held that the City could not be required to pay for a rehabilitation program which the claimant had embarked upon before informing the City of any need for or interest in rehabilitation benefits. In Simpson, as in the instant case, neither the claimant nor his attorney expressed any desire or need for rehabilitative services. The court in Simpson expressly noted that the claimant's injury was not so severe that a reasonable employer would have known that the injured employee would likely be precluded from earning amounts comparable to his pre-injury wage. In the instant case the claimant's initial attending physician released him two months after the accident to return to work without limitation. Neither that doctor, nor the two doctors that subsequently treated the claimant, could find any objective signs of injury. It is obvious from the medical testimony in the instant case that the E/C did not know and had no reason to believe that the claimant's injury would preclude him from earning his pre-injury wages.
The appellant has questioned the propriety of the relationship between the claimant's attorney and Statewide. The issue of the propriety of this relationship is pending before this court in other cases, and has not been considered in reaching our conclusion herein.
The order appealed awarding rehabilitative services does not contain any finding of fact that the claimant sustained any permanent impairment and there is no competent evidence that the injury would preclude the claimant from earning wages equal to the wages he earned prior to the injury. Furthermore, there is no evidence in the record to support such a finding had one been made. The claimant was referred to Statewide for rehabilitation services which were performed before the E/C knew or should have known that there was any need or desire for rehabilitation services. For these reasons, the order authorizing rehabilitation services to be performed by Statewide and directing that they be paid for by the E/C is REVERSED.
ERVIN and SHIVERS, JJ., concur.